**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**PATRICIA BORRIES,**

      **Plaintiff,**

**vs.**                                       **CASE NO. 1:07cv56-MP/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

                                             /

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation

pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the

decision of the Commissioner be reversed and the claim be remanded for

reconsideration consistent with this report and recommendation.

**Procedural status of the case**

Plaintiff, Patricia Borries, applied for supplemental security income benefits.

Plaintiff was 51 years old at the time of the administrative hearing (on January 26, 2005)

and had an 8th grade education.  R. 410-411.  She had past relevant work in heavy

construction.  R. 412.  Plaintiff alleges disability commencing on January 1, 1994, due to depression, anxiety, arthritis, and lung problems.  Since this is a supplemental security income application, however, filed on January 9, 2002, the issue is whether Plaintiff has shown disability commencing on January 9, 2002.

At step 2, the Administrative Law Judge found that Plaintiff has several "severe" impairments:  fibromyalgia, peripheral neuropathy, and depression.  R. 36.  He further found that Plaintiff has the residual functional capacity to lift and carry 20 pounds (10 pounds frequently), sit, stand, and walk for 6 hours in an 8 hour day, occasionally climb, balance, kneel, crouch, and crawl, and perform simple repetitive tasks.  *Id.*  He found that while Plaintiff can no longer do her past relevant work, she can do several light work jobs identified by the vocational expert, and, therefore, is not disabled as defined by Social Security law.  R. 37.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the Administrative Hearing**[1]

Plaintiff testified that she was told she had lupus, and she said she had emphysema and problems with her left lung.  R. 413.  She said she was being checked for hepatitis B.  *Id.*  She said she had a "broken back" on November 5, 2004.  R. 417.  The ALJ asked her whether this was evidence in the record as Exhibit 15F, showing "prior rib trauma and the L5 compression," and she said yes.  R. 418.

Plaintiff said she was "crippled at birth, and I wore braces for four years before I ever walked."  *Id.*  Plaintiff said that her left knee was "shot," and she could not trust it.  R. 420.  She said that she fell sometimes.  *Id.*  She had not had swelling in her left knee for awhile, though.  R. 422.  Her left knee was not tender to the touch, but her right elbow was tender.  *Id.*  She said her right knee was beginning to give her problems, too, because it was taking all of her weight.  R. 421.

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, available on Westlaw.  Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).

Plaintiff said that fibromyalgia caused her to feel as though she had the flu.  R. 422.  Her eyes watered, her hands were stiff, and there was a tingling sensation in her wrists, shoulders, and going through her feet and hips.  *Id.*  She was sensitive to bright lights and smells.  *Id.*

Plaintiff said she had the most pain at the L5 joint of her spine.  R. 423.  She said she got a "splitting headache" from trying to pick up a gallon of milk.  *Id.*  She said that the pain in her lower back was excruciating.  *Id.*  Plaintiff testified that the pain she suffered was 20 on a scale to 10, and that it depended on the weather.  R. 418-419.

Plaintiff said that she had trouble holding objects with her hands.  R. 427.  She was able to dress herself, she said, but had trouble with buttons.  *Id.*  She cooked using a microwave.  R. 428.  She said that she could walk two or three blocks before she became exhausted.  *Id.*  She said that if she walked, she had pain in the knees.  R. 429.  She thought that she could sit for about 30 minutes.  *Id.*  She said she could stand without moving for only about 10 minutes.  *Id.*  Movement helped.  R. 430.  She had to lie down three times a day.  *Id.*

Plaintiff testified that she does not have a driver's license.  R. 416.  She said she does "pretty much nothing" during the day.  *Id.*  She said she watched television and mopped the floor every two weeks from a seated position in a rolling chair.  *Id.*

She said that if she takes a Vicodin,[2] she "sometimes" can "straighten up."  R. 419.  She also takes muscle relaxers, Trazodone,[3] and a sleeping pill at night.  R. 426. She said that her pain was also helped with analgesic patches, physical therapy, and chiropractic treatment.  R. 430.

Plaintiff said that she last used cocaine in 1997.  R. 425.  She said she last used alcohol excessively in 1991.  *Id.*

**Legal Analysis**

**Whether the ALJ erred at step 2**

Plaintiff contends that she has other "severe" impairments that should have been considered at step 2.  Those additional "severe" impairments include:  (1) inability to read or write, (2) homelessness, (3) "polysubstance abuse," and (4) borderline personality disorder, (5) anxiety disorder, and (6) mild depressive disorder.  Doc. 13, pp. 17-22.  Plaintiff contends that it was error not to have found these to be "severe" impairments at step 2 because this caused the ALJ to fail to consider these impairments in combination with other impairments at the other steps.

Homelessness may be a result of impairments, but it is not an impairment as defined under Social Security law.  A Social Security impairment is a physical or mental impairment causing an inability to work.  42 U.S.C. § 423(d)(2)(A).  It was not error for the ALJ to fail to find Plaintiff's homeless status to be a "severe" impairment at step 2.

---

 [2]  A brand name for Hydrocodone.  Hydrocodone is a semisynthetic narcotic derivative of codeine having sedative and analgesic effects more powerful than those of codeine.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

 [3] Trazodone hydrochloride, sold as Desyrel, is an antidepressant.  PHYSICIANS' DESK REFERENCE (2002), p. 518.

Plaintiff testified that she no longer abused drugs or alcohol.  There is no evidence of current substance abuse.  It was not error for the ALJ to fail to consider substance abuse as a "severe" impairment at step 2.[4]

Plaintiff contends that the ALJ should have found that she had "severe" impairments of inability to read or write and has borderline personality disorder, anxiety disorder, and mild depressive disorder.  These require closer analysis.

An inability to read or write would be an impairment only if that inability was caused by an inability to learn to read or write, that is, a learning disability, or by low intelligence.  There is evidence of low intelligence.  There is also evidence that Plaintiff has a borderline personality disorder, an anxiety disorder, and a mild depressive disorder.

On August 27, 2002, Plaintiff was examined by Robert Ginsburg, Ph.D., on a consultative basis.  R. 180-182.  Dr. Ginsburg determined that Plaintiff "suffers from Polysubstance Abuse (305.90), a Borderline Personality Disorder (301.83) and a Mild Depressive Disorder NOS [not otherwise specified] (311)."  R. 182.  He said:

> [Plaintiff] is able to understand and follow directions, can attend and
> concentrate, has low average intellectual skills and no overt memory

---

[4] In any event, the first step would be to determine whether Plaintiff would be disabled if she did not abuse substances.  "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. S 423(d)(2)(C).  "[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination."  Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001).  "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."  20 C.F.R. § 404.1535(b)(1).

deficits.  While she appears to be able to engage in work related activities, she would most likely not look for work.  She is likely to continue to use drugs and alcohol and engage in prostitution.  Her illegal activities are likely to lead her back into jail or prison.

R. 182.

On June 5, 2003, Plaintiff was again given a consultative psychological examination, this time by Hilda Besner, Ph.D.  On examination, Dr. Besner found that Plaintiff's attention and concentration were good.  R. 208.  She said Plaintiff's task persistence was moderate, and she adapted to changes in task with little hesitation.  *Id.* She said that her motor activity was within normal limits.  *Id.*  "She was able to walk, sit, and stand with some difficulty.  Her gait was even and steady.  Patricia's eye contact was adequate, and her speech was coherent."  *Id.*  She was found to have a somewhat depressed mood and blunted affect.  R. 209.  Memory and abstract thinking were intact. *Id.*  Dr. Besner concluded that Plaintiff "may have difficulties performing some of the physical activities required by a workplace.  Her current emotional state may impact her ability to perform."  *Id.*  The prognosis was fair because she was not currently receiving psychological services.  *Id.*  Her diagnosis was Depressive Disorder, NOS, Anxiety Disorder, NOS, and Polysubstance Dependence.  R. 210.

Plaintiff was evaluated on a consultative basis by Cheryl Gotthelf, Ph.D., on April 13, 2004.  R. 264-269.  Plaintiff obtained a full scale IQ of 77, a verbal IQ of 73, and a performance IQ of 85 on the Wechsler Adult Intelligence Scale, 3rd Edition (WAIS-III). R. 266.  Dr. Gotthelf thought that Plaintiff's full scale IQ was between 73 and 82.  *Id.* These scores placed her in the low to borderline intelligence range.  *Id.*  On another test, Plaintiff's verbal comprehension was in the 2nd percentile and her reading and

writing were in the 4th and 5th percentiles, respectively.  R. 367.  Dr. Gotthelf noted that

Plaintiff had "significant psychological problems and feels as though she has gone

astray.  She needs a great deal of environmental and psychological support."  R. 268.

Dr. Gotthelf concluded that Plaintiff:

> has a long-standing history of emotional problems, substance abuse, and difficulties with the law.  In addition, she has medical problems including osteoporosis and arthritis mainly in her hands and lower legs. . . .

> Intellectually, Patricia is functioning within low average/borderline range. Verbal skills are especially low.  On the MBA, she is functioning at an elementary school level.  While she has a paucity of academic skills, no significant learning disabilities were found.

> Last, personality profile portrayed Patricia as a woman with variable moods ranging from depression to hyperactivity.  She has little insight into her behavior, tends to manipulate others, and is unlikely to derive satisfaction in close interpersonal relationships.  She feels hopeless, helpless, agitated and shows poor judgment and coping skills.  Her prognosis is guarded.

> There are several impediments to employment.  Patricia shows a depressed and agitated mood much of the day and has lost interest in many activities.  She experiences insomnia, psychomotor retardation, and feelings of worthlessness.  She also feels hopeless, has low self-esteem and is more talkative than seems appropriate.  She experiences racing thoughts, and has had excessive involvement in pleasurable activities that have high potential for painful consequences.  In addition, Patricia is impulsive, fails to plan ahead, and does not learn from her mistakes.  She is likely to be irresponsible, and respond inappropriately to social situations.

> Given her lack of academic skills and low intellectual level, Patricia is likely to encounter difficulty understanding complicated ideas and concepts or learning complex tasks.  Reading skills are poor, and she may encounter difficulty reading instructions or understanding written language.  She is not likely to acquire new work skills easily.  In addition, given her somatic complaints, she is likely to have excessive absenteeism or tardiness.

R. 268-269.  Dr. Gotthelf felt that her evaluation was a valid assessment of Plaintiff's

current level of functioning.  R. 266.

Dr. Gotthelf's diagnosis was Bipolar Disorder, Not Otherwise specified, Pain disorder associated with both Psychological Factors and a General Medical Condition, Borderline Intellectual Functioning, and Orthopedic Problems.  R. 269.  On Axis V, Dr. Gotthelf assigned a GAF score of 45.[5]  *Id.*  Dr. Gotthelf concluded that until Plaintiff "shows consistent emotional stability, she is not likely to function well in a vocational setting."  *Id.*

Plaintiff also had a vocational evaluation on June 7 and 18, 2004, by Ivan P. Jasper.  R. 305-312.  The evaluator found that Plaintiff had great difficulty using a computer mouse, possibly due the physical condition of her hands and fingers.  R. 305-306.  He noted that she "had difficulty maintaining concentration and focus" and "had difficulty following directions and was not able to work independently."  R. 306.  On the Test of Adult Basic Education, Mr. Jasper found that Plaintiff was at grade 1.1 in reading, grade 2.4 in mathematics, grade 5.6 in language, and grade 3.8 in spelling.  R. 307.  He thought that she had an average aptitude for clerical perception.  *Id.*  With respect to her ability to do full-time work, Mr. Jasper said:

> [Plaintiff] would benefit from a benign and accommodating working environment.  [Plaintiff] should initially be placed in a part-time employment position to ascertain work related stamina and stress levels.

R. 311.  He also determined that she had "significant career obstacles," including "poor reading ability and very limited ability to use a computer and physical and emotional problems, a history of substance abuse and a criminal record."  *Id.*

---

[5] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.'  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)."  <u>Sims v. Barnhart</u>, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).

The Administrative Law Judge discussed the opinions of Drs. Ginsburg, Besner, and Gotthelf, but concluded from some of the more positive observations in those opinions that Plaintiff did not have a mental impairment having *any* effect upon her ability to work.  R. 32-33.  While the discussion did not mention step 2 analysis, none of the mental impairments mentioned by these psychologists was listed as a "severe" impairment when the ALJ listed those "severe"  impairments.  R. 36.

At step 2, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them

from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting*

Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by

the Supreme Court as a criterion which identifies "at an early stage those claimants

whose medical impairments are so slight that it is unlikely they would be found to be

disabled even if their age, education and experience were taken into consideration."  *Id.*,

*quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119

(1987).

An erroneous finding as to "severe" impairments at step 2 improperly forecloses

a claimant's "ability to demonstrate the merits of her claim for disability with respect to

her former work activities."  Flynn, 768 F.2d at 1275.  All impairments, whether "severe"

or not, must be evaluated in combination at all stages of the analysis.  20 C.F.R. §§

404.1523 and 416.923; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990);

Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528,

534 (11th Cir. 1993); Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985).

The Eleventh Circuit has "repeatedly held that an ALJ must make specific and well-

articulated findings as to the effect of the combination of impairments when determining

whether an individual is disabled."  Davis v. Shalala, 985 F.2d at 534.

"A 'substantial evidence' standard . . . does not permit a court to uphold the

Secretary's decision by referring only to those parts of the record which support the ALJ.

A reviewing court must view the entire record and take account of evidence in the

record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720

F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and

has sufficiently explained the weight he has given to obviously probative exhibits, to say

that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

When all of the evidence in this record is considered, it seems undisputed that Plaintiff is functioning at an early elementary school grade level.  While there is no evidence of a learning disability as such, she tests at a low intelligence level and has a very low set of academic skills.  A person of low intelligence often has the residual functional capacity to do certain kinds of work, but low intelligence has more than a minimal effect upon a person's ability to work, especially when it is coupled with an inability to read.

Moreover, Plaintiff has been diagnosed by experts as having bipolar disorder, borderline personality disorder, anxiety disorder, and depression.  These also are serious mental impairments that should be expected to have more than a minimal effect upon Plaintiff's ability to work.  Dr. Ginsburg, the most optimistic of the experts, said he did not think Plaintiff would look for work because she would engage in prostitution and use drugs.  But he did not say he thought she was capable of working.  He only said "she appears to be able to engage in work related activities."  Dr. Ginsburg also said that Plaintiff suffers from borderline personality disorder and mild depressive disorder, a potent combination of mental illnesses that would likely have more than a minimal effect upon Plaintiff's ability to work.

Dr. Besner said that Plaintiff may have difficulties performing some of the physical activities required by a workplace, and she thought that her current emotional

state may impact her ability to perform.  She determined that Plaintiff's prognosis was only fair because she was not currently receiving psychological services.  Her diagnosis was depressive disorder and anxiety disorder.

Dr. Gotthelf was the most recent psychologist to test and examine Plaintiff, and the most pessimistic.  She assigned a GAF score of 45.   This is significant evidence that Plaintiff's mental impairments have more than a minimal affect upon her ability to work.  "GAF scores of 41 to 50 reflect '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' "  Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 663 n. 2 (8th Cir. 2003).  Dr. Gotthelf also mentioned "several impediments to employment."  Among the impediments mentioned were depression, agitated mood, loss of interest, insomnia, psychomotor retardation, feelings of worthlessness, inappropriate talkativeness, racing thoughts, excessive involvement in pleasurable activities that have high potential for painful consequences, impulsiveness, failure to plan, failure to learn from mistakes, lack of responsibility, inappropriate responses in social situations, lack of academic skills, low intellectual level, poor reading skills leading to a difficulty reading instructions, and the likelihood of excessive absenteeism or tardiness due to bodily complaints.

The most recent evaluation was by Ivan Jasper.  Like the others, he found that Plaintiff has "significant career obstacles."

Thus, the few positive comments made by these three psychologists were not substantive evidence for the Administrative Law Judge to fail to find at step 2 that Plaintiff's mental impairments, in combination, are "severe" impairments.  As a

consequence, the ALJ failed to consider these mental impairments in combination with Plaintiff's physical ailments.  As noted above, the focus must always be upon what effect a *combination* of impairments has upon the claimant's ability to do work 8 hours a day, 5 days a week.  The claim should be remanded for reconsideration at steps 3, 4, and 5.

Plaintiff also argues that the ALJ erred in failing to ask the vocational expert hypothetical questions containing all of her impairments.  The ALJ asked the vocational expert to consider a hypothetical person age 49, having a limited education, and having the ability to do light work, with postural limitations, low stress, and requiring only simple tasks.  R. 433.  The vocational expert said that such a person could not do Plaintiff's past relevant work, but could work as a small products assembler, a person who wrapped and packed materials, or tending an injection molding machine.  R. 433-434.

This hypothetical failed to consider each of Plaintiff's mental impairments in combination with each of her physical impairments.  The evidence suggests that Plaintiff would be excessively absent, inappropriate in social situations, depressed, agitated, with a low intelligence and an inability to read, and those impairments should have been considered in combination with her physical problems.

A second hypothetical was suggested.  Assuming that the person could lift nothing weighing more than 10 pounds, with the same limitations but adding the limitations of having to avoid extreme heat and cold, humid weather, and fumes, and being limited to 3 to 4 hours a day doing work that required reaching, fingering, and handling, the vocational expert said that no jobs existed for such a person in the

national economy.  R. 434.  Again, this hypothetical failed to consider Plaintiff's mental impairments in combination with her physical impairments.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge failed to follow the law and are not based upon substantial evidence in the record.  At step 2, the ALJ should have found that Plaintiff suffers from the following "severe" impairments:  fibromyalgia, peripheral neuropathy, low intelligence, borderline personality disorder, anxiety disorder, and mild depressive disorder.  The decision of the Commissioner should be reversed and the claim remanded so that the combination of *all* of these impairments may be considered at all subsequent steps of analysis.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and the claim be **REMANDED** for reconsideration at steps 3, 4, and 5 consistent with this report and recommendation.

**IN CHAMBERS** at Tallahassee, Florida, on November 5, 2007.


s/     **William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:07cv56-MP/WCS